IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NICK J DIMAS,

    Plaintiff,

v.       CV 20-0345 JHR

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration,[1]

    Defendant.

# MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff Nick Dimas' Motion to Reverse and Remand with Supporting Memorandum [Doc. 24], fully briefed on June 25, 2021. [Docs. 28, 29, 30]. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to the undersigned Magistrate Judge to dispose of Mr. Dimas' appeal of the Final Decision of the Acting Commissioner and to enter a Final Judgment. [Docs. 3, 5, 6]. Having reviewed the parties' briefs and the administrative record (*AR*), the Court **denies** Mr. Dimas' Motion and **affirms** the Final Decision of the Commissioner in this case.

## I.    INTRODUCTION

Mr. Dimas was last insured for the purposes of the Social Security Act in December 2015. [Doc. 24, p. 1]. Six months later he was injured while working as a sheriff's deputy at the age of 50. [*Id.*]. While he initially sought disability insurance benefits, he now only seeks hospital insurance (Medicare) benefits. [*Id.*]. However, to be eligible for Medicare at his age Mr. Dimas must show that he is disabled as defined in the Social Security Act. *See* 42 U.S.C. § 426(b)(2)(A);

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, is substituted for former Commissioner Andrew Saul as the Defendant in this suit.

20 C.F.R. § 404.1018b(a). The same sequential evaluation process applicable to disability insurance claims applies. 42 U.S.C. § 426(b)(2)(C)(ii). Following that process, the administrative law judge ("ALJ") assigned to Mr. Dimas' case determined that he did not demonstrate disability as defined in the Social Security Act and denied Medicare benefits. Mr. Dimas appeals, claiming that the ALJ failed to incorporate valid restrictions in his residual functional capacity, misconstrued his testimony, and failed to identify a sufficient number of jobs within his capacity. Having reviewed the briefing and record, the Court respectfully disagrees.

## II.     PROCEDURAL HISTORY

Mr. Dimas filed an application for Social Security Disability Insurance Benefits under Title II of the Social Security Act in October 2017, alleging disability as of June 2016. *AR* at 217-233. It was later determined that Mr. Dimas was ineligible for Disability Insurance Benefits,[2] and a Medicare application was filed and escalated. *AR* at 11-14, 245-246, 250, 324. A hearing was held in April 2019 where ALJ Jennifer Fellabaum dismissed Mr. Dimas' Disability claim with the agreement of his counsel and took evidence on Mr. Dimas' Medicare claim. *See AR* at 35-63. On May 20, 2019, she issued an unfavorable decision, finding that Mr. Dimas "was not under a disability, as defined in the Social Security Act, at any time since June 22, 2016, the alleged onset date, through the date of [her] decision[.]" *AR* at 24. Mr. Dimas filed a "Request for Review of Hearing Decision/Order" on June 25, 2019. *AR* at 213-216. The Appeals Council denied review on February 12, 2020, rendering the ALJ's decision the Final Decision of the Commissioner. *See AR* at 1-7; *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). This Court now has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

---

[2] [*See* Doc. 28, p. 3 n.3, which artfully explains why Mr. Dimas was ineligible for SSDI but eligible for Medicare based on his earnings as a sheriff's deputy.].

### III.   THE COMMISSIONER'S FINAL DECISION

A claimant seeking disability insurance benefits must establish that he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 404.1520(a)(4).[3]

At step one of the sequential evaluation process the ALJ found that Mr. Dimas has not engaged in substantial gainful activity since his alleged onset date. *AR* at 14. At step two, she determined that Mr. Dimas has the severe impairments of "depression, left middle finger amputation, and right knee meniscus tear[.]" *AR* at 14. At step three, the ALJ concluded that Mr. Dimas' impairments, individually and in combination, do not meet or medically equal the regulatory "listings." *AR* at 14-16. Mr. Dimas does not challenge the ALJ's conclusions through step three. [*See* Doc. 24].

When a claimant does not meet a listed impairment the ALJ must determine his residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). Residual Functional Capacity is a multidimensional description of the work-related abilities a claimant retains despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374184, at *1. In this case, the ALJ determined that Mr. Dimas retains the following Residual Functional Capacity:

> to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally crouch, kneel, crawl, and climb ramps and stairs. He can never climb ladders, ropes, or scaffolds, or be exposed to unprotected heights or hazardous machinery. The claimant can occasionally finger, handle, and feel with the left non-dominant upper

---

[3] The Tenth Circuit summarized these steps in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016).

extremity. He can perform semi-skilled work, up to a specific vocational preparation (SVP) of four, and cannot perform fast-paced production work.

*AR* at 16-17. Employing Mr. Dimas' RFC at steps four and five and relying on the vocational expert's testimony from the hearing, the ALJ determined that Mr. Dimas is unable to perform his past relevant work as a sheriff's deputy, journeyman pipe fitter, oil field laborer, police officer or security guard. *AR* at 22. However, the ALJ found that there are jobs that exist in significant numbers in the national economy that Mr. Dimas can perform despite his impairments: teacher aid (102,000 jobs), garment sorter (196,000 jobs), potato chip sorter (190,000 jobs), and cannery worker (149,000 jobs). *AR* at 636. Accordingly, the ALJ determined that Mr. Dimas is not disabled as defined in the Social Security Act and denied Medicare benefits. *AR* at 24.

## IV.　STANDARD OF REVIEW

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting Mays v. Colvin, 739 F.3d 569, 571 (10th Cir. 2014)). The Court must "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation omitted). The Court reviews only the sufficiency of the evidence, not its weight. *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion [and] requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (quotation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record". *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

## V. ISSUES

1. Did the ALJ err by failing to include in Mr. Dimas' Residual Functional Capacity the walking and standing limitations from the opinion of physical therapist Mary Beth Plummer?

2. Did the ALJ fail to properly evaluate Mr. Dimas' statements concerning the effects and limitations of his impairments and symptoms?

3. Did the ALJ fail to identify a significant number of jobs within Mr. Dimas' Residual Functional Capacity?

## VI. ANALYSIS

The result in Mr. Dimas' case is unfortunate. He seeks only Medicare benefits after pursuing and becoming injured in the scope of public service. However, without compelling evidence that he is more limited than the ALJ determined, the Court is unable to hold that he is disabled as a matter of law under the Social Security Act.

### A. Assuming *arguendo* that the ALJ erred in weighing Ms. Plummer's opinion, any error was harmless because the RFC was consistent with her opinion and the ALJ identified jobs existing in significant numbers within Mr. Dimas' RFC.

Mr. Dimas argues that "[i]n denying his claim for Medicare, the ALJ impermissibly picked and chose from an uncontradicted medical opinion even though she found the opinion supported and consistent with the record in order to find Mr. Dimas not eligible to enroll and pay for Medicare benefits." [Doc. 29, p. 2 (citing *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004)]. Mr. Dimas is referencing the opinion of MaryBeth Plummer, a physical therapist who examined him and performed a Functional Capacity Evaluation and Assessment. *See AR* at 444-465. As Mr. Dimas notes, the ALJ found Ms. Plummer's opinion persuasive, consistent and supported. *AR* at 21. However, argues Mr. Dimas, "the ALJ failed to explain why she did not include the walking and standing limitations Ms. Plummer found." [Doc. 29, p. 2].

5

The ALJ reasoned:

> After performing the claimant's Functional Capacity Evaluation and Assessment, Mary Beth Plummer, P.T, CSFA opined that the claimant has the capacity to lift twenty pounds occasionally and carry up to thirty pounds occasionally, with no restrictions on sitting, and *can stand for one to three hours at a time and walk for thirty to sixty minutes at one time*. (SF/17). She further opined that the claimant would be unable to return to work in law enforcement due to decreased manipulative abilities in his left hand, and can occasionally squat, kneel, and crawl. (SF/17). The undersigned is somewhat persuaded by this opinion, finding it well supported by Ms. Plummer's physical examination of the claimant, as well as his statements during the examination, as well as generally consistent with the record of the claimant's continued pain in his knee and left hand.

*AR* at 21 (emphasis added). The question, therefore, is whether the ALJ should have included Ms. Plummer's walking and standing restrictions in Mr. Dimas' Residual Functional Capacity.

As noted above, the ALJ found that Mr. Dimas can:

> perform *light work as defined in 20 CFR 404.1567(b)* except he can occasionally crouch, kneel, crawl, and climb ramps and stairs. He can never climb ladders, ropes, or scaffolds, or be exposed to unprotected heights or hazardous machinery. The claimant can occasionally finger, handle, and feel with the left non-dominant upper extremity. He can perform semi-skilled work, up to a specific vocational preparation (SVP) of four, and cannot perform fast-paced production work.

*AR* at 16-17 (emphasis added). According to the regulations,

> "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, *a job is in this category when it requires a good deal of walking or standing*, *or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.* To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (emphasis added). The emphasized language shows that Mr. Dimas' argument might be persuasive, depending on *which* light jobs were identified for him in this case.

On appeal, "[t]he Commissioner acknowledges that the ALJ's findings with respect to the teacher aide and cannery worker occupations are flawed[.]" [Doc. 28, p. 21]. This leaves only two

6

jobs within Mr. Dimas' Residual Functional Capacity: garment sorter and potato chip sorter. *AR* at 23. The Commissioner argues that because those two jobs can be performed even with the additional limitations identified by Ms. Plummer, any error of omission by the ALJ is harmless. [Doc. 28, p. 21].[4] In other words, if Ms. Plummer's standing and walking restrictions are irrelevant because the jobs at issue can be done from a seated position, the Court must affirm the ALJ's decision, even assuming error.

The Dictionary of Occupational Titles provides the answer. As stated there, the garment sorter position appears to be capable of completion in a seated position. *See* DOT 222.687-014 ("Sorts finished garments, such as shirts, dresses, and pajamas, according to lot and size numbers recorded on tags and labels attached to garments."). Likewise for potato chip sorter. *See* DOT ("Observes potato chips on conveyor and removes chips that are burned, discolored, or broken."). Even assuming *arguendo* that the ALJ erred in omitting Ms. Plummer's walking and standing limitations from Mr. Dimas' Residual Functional Capacity, any such error was harmless and not reversible.

---

[4] Mr. Dimas argues in his Reply that "[t]he VE testimony is suspect, given that the ALJ limited the RFC to occasional use of the left hand, yet the VE identified jobs that require frequent use of the hands." [Doc. 29, p. 3 (citing DOT 222.687-014, and 526.687-010)]. It is true that the ALJ limited Mr. Dimas' use of his left hand. However, with respect to the inconsistency between the jobs identified and Mr. Dimas' RFC, the ALJ found as follows:

> [a]lthough the vocational expert's testimony is inconsistent with the information contained in the Dictionary of Occupational Titles, there is a reasonable explanation for the discrepancy. Pursuant to the DOT, the jobs cited all require frequent fingering, handling, and feeling. The vocational expert testified that based on his experience all of these jobs can be performed by a one handed (sic) person with occasional help from his non-dominant side.

*AR* at 23. The ALJ was permitted to rely on the vocational expert's explanation, and that explanation constitutes substantial evidence in support of the appropriateness of these jobs despite Mr. Dimas' impairments. *See, e.g.*, *Segovia v. Astrue*, 226 F. App'x 801, 804 (10th Cir. 2007) ("In sum, the VE's testimony that Ms. Segovia could perform the jobs of ticket taker, usher, and cafeteria attendant [despite her limitations] constitutes substantial evidence supporting the Commissioner's decision to deny benefits.").

### B. The ALJ's evaluation of Mr. Dimas' symptoms was reasonable and supported by substantial evidence.

The ALJ found that Mr. Dimas' statements about the intensity, persistence and limiting effects of his symptoms were inconsistent. *AR* at 18. Mr. Dimas argues that the ALJ's analysis is unsupported by substantial evidence. [Doc. 24, pp. 8-9].[5] The Commissioner disagrees, arguing that the ALJ's analysis is supported by substantial evidence. [Doc. 28, p. 20]. The Court finds the Commissioner has the better argument.

This Court begins with the proposition that "an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability." SSR 16-3P, 2017 WL 5180304, *2. Additionally, "subjective symptom evaluations," formerly labeled "credibility"[6] determinations, "are peculiarly the province of the finder of fact and will not be overturned when supported by substantial evidence." *Watts*, 2017 WL 4862424, at *3 (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010)). Under *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), and its progeny,

> the ALJ must consider and determine: (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

*Brownrigg v. Berryhill*, 688 F. App'x 542, 545 (10th Cir. 2017) (quoting *Keyes-Zachary*, 695 F.3d at 1166-67).[7]

---

[5] Mr. Dimas describes the ALJ's errors as legal, but then does not explain how the ALJ erred as a matter of law, focusing instead on his argument that the ALJ misrepresented his daily activities. [See Doc. 24, pp. 8-9]. Having reviewed the decision, the Court finds no legal error was committed.

[6] The Administration eliminated the use of the term "credibility" from its sub-regulatory policy for the purpose of clarifying "that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3P, 2017 WL 5180304, *2.

[7] An ALJ is not required to cite to *Luna* if he states its paradigm. *Razo v. Colvin*, 663 F. App'x 710, 717 (10th Cir. 2016) (unpublished).

Factors under the regulations relevant to the determination of whether a claimant's pain is in fact disabling include:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); SSR 16-3P, 2017 WL 5180304, *7-8; *see Watts v. Berryhill*, 705 F. App'x 759, 763 (10th Cir. 2017) (unpublished) (citing *Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004)). Findings as to a claimant's subjective pain "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. . . . But we do not require a formalistic factor-by-factor recitation of the evidence." *Watts*, 705 F. App'x at 763 (citing *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000)). To the contrary, an ALJ need only discuss those factors that are "relevant to the case." SSR 16-3P, 2017 WL 5180304, *8.

"Symptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques. However, objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities[.]" SSR 16-3P, 2017 WL 5180304, *5. That said, "we will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." *Id.* Rather, "if we cannot make a disability determination or decision that is fully favorable based solely on

9

objective medical evidence, then we carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms." *Id.* at *6.

> If an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities. . . . In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities. . . .

*Id.* at *8.

Relevant to this appeal, when formulating Mr. Dimas' Residual Functional Capacity ALJ Fellabaum discussed his testimony at the hearing, including "that he has been able to modify how he performs tasks to accommodate the limitations." *AR* at 18. The ALJ summarized Mr. Dimas' daily activities as well as his medical records spanning from June 22, 2016 (his onset date) through January 2019, and the medical opinions in the file. [*AR* at 18-22]. The ALJ concluded that Mr. Dimas' statements were "inconsistent because the record does not support the degree of limitation alleged[.]" [*AR* at 18]. Mr. Dimas takes no real issue with any of these statements other than alleging that his daily activities were misconstrued by the ALJ, but the question is whether the ALJ's findings regarding those daily activities were supported by substantial evidence. Having reviewed the record, the Court finds that substantial evidence supports the ALJ's findings.

Even if the ALJ erroneously relied on misstatements about Mr. Dimas' daily activities, the ALJ's other reasons are supported by substantial evidence. Therefore, the Court will not reverse on the ALJ's evaluation of Mr. Dimas' statements. *See, e.g.*, *Butler v. Astrue*, 410 F. App'x 137, 139 (10th Cir. 2011) (unpublished) ("[W]e need not address this issue, because the ALJ's other reasons provide substantial evidence to support the credibility determination."); *Pickup v. Colvin*,

606 F. App'x 430, 432 (10th Cir. 2015) (unpublished) ("Although we agree with the district court that two aspects of the ALJ's credibility determination are mistaken, 'we conclude that the balance of the ALJ's credibility analysis is supported by substantial evidence in the record.'") (quoting *Branum v. Barnhart*, 385 F.3d 1268, 1274 (10th Cir. 2004)). While the Court acknowledges that the evidence could have been weighed differently, it is beyond the Court's purview to reverse if a decision is generally supported by substantial evidence, as here.

### C. While two of the four jobs relied on by the ALJ are inconsistent with Mr. Dimas' Residual Functional Capacity, the two remaining jobs render the ALJ's error harmless.

Mr. Dimas argues that all the jobs identified by the ALJ are inconsistent with his RFC. [*See* Doc. 24, pp. 11-12]. As noted, the Commissioner acknowledges that the ALJ's findings with respect to the teacher aide and cannery worker occupations are flawed. [Doc. 28, p. 21]. However, the Commissioner argues that the ALJ reasonably resolved any conflict between the vocational expert's testimony and the fingering, handling, and feeling demands of the two remaining occupations (garment sorter and potato chip sorter). [Doc. 28, p. 21 (citing *AR* at 23)]. As reasoned above, the Court agrees with the Commissioner that these jobs are consistent with Ms. Plummer's opinion and Mr. Dimas' RFC. These two occupations represent a total of 386,000 available jobs, *AR* at 23, a number that is "significant" as a matter of law on harmless error review under current Tenth Circuit law. *See Raymond*, 621 F.3d at 1274; *Evans v. Colvin*, 640 F. App'x 731, 736 (10th Cir. 2016) (unpublished) (recognizing that, for harmless error purposes, the number of jobs needed to qualify as "significant" "appears to be somewhere between 100 . . . and 152,000" (citations omitted)). In other words, the ALJ's job-related errors were harmless in this case and not reversible.

## VII. CONCLUSION AND ORDER

Mr. Dimas' circumstances are unfortunate. However, he has not shown that omission of Ms. Plummer's walking and standing limitations affected his case, that the ALJ's symptom evaluation was unsupported by substantial evidence, or that there were not enough jobs identified within his Residual Functional Capacity after eliminating two of the four the ALJ identified. In sum, no reversible error is demonstrated.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse and Remand [Doc. 24] is **denied**.

**IT IS FURTHER ORDERED** that a Final Judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure be entered affirming the decision of the Acting Commissioner and dismissing this action with prejudice.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent